## OHIO OIL CO v LILES

Ohio Appeals, 5th Dist, Licking Co

No 1835. Decided Nov 29, 1935

## OPINION

By LEMERT, PJ.

This case was presented to this court by well prepared briefs, and in oral argument, and the plaintiff in error's main contention is that the court below should have sustained the motion made after plaintiff had rested and should have directed a verdict, and, further, that the court should have sustained the motion when it was renewed after the completion of all the evidence.

The plaintiff in error further complains of the charge of the court. We note from a reading of the evidence that in the trial of this case in the court below, there were very few exceptions taken to the rulings of the court during the trial of this action.

This was a personal injury case. Liles, the plaintiff below was badly injured. His complaint was that his truck, which he was driving westwardly along the National Pike at Jacksontown, was run into by a truck belonging to the defendant below, and that the operator of that truck was negligent in a number of particulars.

Route 40 was the National Pike, which runs in a general easterly and westerly direction at that place, and intersects Route 13, which runs in a northerly and southerly direction. The two highways intersect at right angles. There was at the time of the accident a traffic light at said intersection, as hereinbefore described, so with the foregoing set-up, we direct our atten-

tion to the case of **Cleveland Railway v Goldman, a minor, 122 Oh St, page 73,** holding to the effect that where both parties are at the intersection, both with the green light in their favor, that they should govern themselves, so far as they are able, to protect and avoid injury to the other. The syllabus in that case is as follows:

"When the 'go' signal changes before a person entering the intersection with such signal has an opportunity to emerge from such intersection, and a person from a cross street has entered such intersection with the 'go' signal in his favor, neither is wrongfully there, and their rights are equal, subject to the qualifications that for his own and the safety of the other, each must regulate his conduct with reference to his own and such other person's ability, or lack of ability, to stop or deviate from his course."

From a careful reading of the record in this case and particularly that of the drivers of the trucks that were in the collision and of the eye witnesses who claim to have seen the accident, the evidence strikes us as tending to prove that the true theory of this lawsuit was and is that the driver of the oil truck came up to this intersection paying no attention to anything other than the light—paying no attention whatever to traffic on Route 40. The evidence shows that he was familiar with the traffic light. He knew he had run over the trap and then he himself, that is, the driver of the oil truck says:

"The light changed and turned in his favor and without regard to anyone else on the highway, he started forward, with the result that the collision occurred."

So that, from his own testimony, as well as that of the witness, Griffith, and other witnesses who saw the accident, his truck was barely moving and he had it under such control that he could have stopped it within a very short distance and thereby avoided the injury to the plaintiff below. We note the testimony of one, William Gallagher, as found on pages 91, 92 and 93, of the record, as follows:

"A. Well, I would say I was about fifteen feet from the pike when I stopped, or just practically stopped there, when it changed to green.

Q. Did you stop, or didn't you stop?
A. I might have stopped.
Q. You don't know?
A. I know I was barely moving.

Q. You don't know whether you stopped, or didn't stop, that is the size of it, isn't it?
A. Well, I wouldn't say that I stopped still, but—
Q. (Interrupting): You are—
By Mr. Flory: (Interrupting): Let him finish.
By Mr. Fitzgibbon: Go ahead.
A. As I said before, I was just practically moving when the light changed to green.
Q. You further said you stopped, didn't you—which was it, did you stop, or didn't you?
A. I said I might have stopped, but the wheels were barely moving.
Q. The fact of the matter is, you don't know whether you stopped, or not?
A. No.
Q. The fact further is, that you were looking at the light and not paynig any attention to anything else?
A. I would naturally look at the light.
Q. And you started across as soon as the light changed?
A. As soon as the light changed, I started.
Q. Where was this Chicago truck, as we will call it, at that time, if you know?
A. Well, as I say, as I started the truck it seemed like it was quite a ways up the road, and I didn't think he would come through the red light.
Q. You say it was quite a ways, how far was it—was it two hundred yards?
A. Yes, it might have been.
Q. Was it three hundred yards?
A. Well, it might have been.
Q. Was it four hundred yards?
A. No, it wasn't."

So that it is easy to understand that the jury, hearing all the evidence of the driver of the oil truck and the other eye witnesses, concluded—and we believe rightfully so—that the driver of the oil truck, as he himself testified, was not paying any attention to other travellers lawfully on the highway. This being so, the court below was right in refusing to direct a verdict after plaintiff rested, and the court was right in refusing to direct a verdict at the completion of all the testimony.

We have carefully examined the charge of the court and we have to say that this charge could be improved upon, yet after carefully considering any of the complaints made against it, by reason of omission or commission, we can not find any prejudicial error therein.

Plaintiff in error assails this charge from

all angles, complaint being made that the court did not charge on contributory negligence because the court failed to use the word "want" in defining negligence as want of ordinary care. We note that it is true, as shown by the record, that when the court first mentioned contributory negligence the word "want" was lacking, but immediately following and in two separate sentences following the word was used in connection with the definition. The court below used the following language:

"Arising in this case is the defense known as contributory negligence. Contributory negligence may be defined to you in this way: It is such an act or omission on the part of the plaintiff amounting to ordinary care, as concurring or cooperating with some negligence of the defendant is the proximate cause of the injuries complained of. It is the legal duty of all persons to exercise ordinary care to avoid injury. Therefore, if you find the defendant in some respect, or respects, negligent in causing plaintiff's injuries, if any, as charged in the petition, and also find any want of ordinary care, even in any degree, on the part of the plaintiff, which want of ordinary care by plaintiff directly and proximately contributed to the injuries, the plaintiff in such case cannot recover."

We are of the opinion that there is nothing prejudicial in the above charge for which the plaintiff in error has the right to complain.

We further note that the court charged as follows:

"If the plaintiff, Liles, drove his truck into the intersection while the traffic light was red as to him, then you are charged, the plaintiff, Liles, was guilty of contributory negligence, and your verdict should be for the defendant, The Ohio Oil Company."

We further note that there was submitted to the court below three separate, distinct charges, which the plaintiff in error asked the court to charge, and they were charged as given.

It is further noted that when the trial judge finished his charge he said to counsel, "Is there anything I have omitted?" And he was answered by Mr. Flory, "Also the special charges." None of these matters of which counsel now complain were mentioned or called to the court's attention.

In the case of State v Driscoll, 106 Oh St, p. 38, the Supreme Court said:

"The language of §11561, GC, is so clear that it does not admit of judicial interpretation, and yet, as pointed out by Donahue, J., in the McCoy case, and by Price, J., in the case of Columbus Ry. v Ritter, supra, it is the duty of counsel in order to bring about full and complete justice to aid the court by calling attention to any omitted matters and by making specific request for further instructions, and any other rule would be a hindrance to the administration of justice."

In the case of **Adams v State, 25 Oh St, 584,** the Supreme Court said:

"These rules, it is said, have their foundation in a just regard to the fair administration of justice, which requires that when an error is supposed to have been committed, there should be an opportunity to correct it at once, before it has had any consequences; and does not permit the party to lie by, without stating the ground of his objection, and take the chances of success on the grounds on which the judge has placed the cause, and then, if he fails to succeed, avail himself of an objection which, if it had been stated, might have been removed.

"Any other rule would relieve counsel from any duty or responsibility to the court and place the entire responsibility upon the trial court to give faultless instructions upon every possible feature of the case, thereby disregarding entirely the true relation of court and counsel which enjoins upon counsel the duty to exercise diligence and to aid the court rather than by silence mislead the court into commsision of error."

We have carefully examined the record as to the nature and extent of plaintiff's injuries and we can not say that the amount awarded by the jury was excessive. It, therefore, follows that the judgment of the court below will be and the same is hereby affirmed.

Exceptions may be noted.

MONTGOMERY and SHERICK, JJ, concur.